UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

International Longshoremen's
Association, Local Union No. 1982,

Case No. 3:17-cv-1688

Plaintiff,

v.

MEMORANDUM OPINION
AND ORDER

Midwest Terminals of Toledo
International, Inc.,

Defendant.

## I.  BACKGROUND

This case arises from the aftermath of earlier litigation between Plaintiff International Longshoremen's Association, Local Union No. 1982 ("Local 1982), and Defendant Midwest Terminals of Toledo International, Inc.  *See* Case No. 3:12-cv-1384.  That case involved a dispute arising under a collective bargaining agreement between the parties containing "elaborate grievance-procedure provisions that Midwest and the Union must invoke to resolve disputes between them," *Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo Int'l, Inc.*, 560 F. App'x 529, 531 (6th Cir. 2014) ("*Local 1982 I*"), and Local 1982's attempt to confirm an arbitration award concerning whether Midwest had established "a welfare-and-pension trust fund in compliance with the Employee Retirement Income Security Act ("ERISA")," as required by the CBA.  *Local 1982, Int'l*

*Longshoremen's Ass'n v. Midwest Terminals of Toledo Int'l, Inc.*, 694 F. App'x 985, 986 (6th Cir. 2017) ("*Local 1982 II*").

After the Sixth Circuit affirmed my order remanding the arbitration award for clarification, *see id.*, Local 1982 sought to prohibit a Midwest executive from serving on the Joint Grievance Committee tasked with clarifying the arbitration award. (Doc. No. 1). Local 1982 filed a motion for a temporary restraining order concerning this matter, (Doc. No. 2), which I denied. (Doc. No. 6).

The Joint Grievance Committee is made up of two individuals, one appointed by the Great Lakes Stevedore Employers, ("GLSE"), and one appointed by the Great Lakes District Council, Atlantic Coast District, International Longshoremen's Association, AFL-CIO ("GLDC-ACD/ILA"). (Doc. No. 1-1 at 15). Following a clarification hearing regarding the arbitration award from Step 2 of the grievance process on November 8, 2017, the two members of the Joint Grievance Committee reached separate conclusions as to the appropriate procedure for funding and managing the ERISA plan required by the CBA.

Ray Sierra, the Executive Counsel International Vice President of the International Longshoremen's Association ("ILA"), the Executive Vice President of the Great Lakes District Council of the ILA, and the individual appointed by the GLDC-ACD/ILA, concluded the proper procedure was the creation of a fund jointly administered by trustees appointed by Midwest and Local 1982. (Doc. No. 21-4).

Fred Deichert, Chief Financial Officer for Midwest and the GLSE-appointee, disagreed, concluding neither the master nor the local collective bargaining agreements provide for jointly-administered plans and that a Midwest-funded benefits plan could meet the minimum requirements of ERISA without joint trustees. (Doc. No. 21-3). Local 1982 submitted its written notice of its "desire to advance the matter to the next step of the grievance procedure before the expanded

committee" within 10 days of the issuance of Deichert's final opinion, which was the latter of the two issued by the members of the Joint Grievance Committee. (Doc. No. 21-5).

Local 1982 now seeks an order requiring the parties to proceed with the grievance and arbitration procedure described in the CBA. (Doc. No. 21). Step 3 of the grievance process provides that a grievance which "is not satisfactorily settled or adjusted in Step 2, it shall be referred to an Expanded Joint Grievance Committee consisting of the Joint Grievance Committee established pursuant to Step 2 and, in addition, the President of the GLDC-ACD/ILA and representative of the Bargaining Committee of the Employers." (Doc. No. 1-1 at 15). A grievance which is not resolved at Step 3 "may be submitted to arbitration by either party" upon 30-days' written notice. (Doc. No. 1-1 at 15); *see also* Sections 25.C through 25.J of the CBA.

Midwest opposes this request, arguing Local 1982's earlier efforts to confirm the arbitration award result in the termination of the arbitration procedure. (Doc. No. 23). Local 1982 filed a reply brief in support of its request. (Doc. No. 24). For the reasons stated below, I remand this matter and order that the parties proceed with their contractual grievance and arbitration procedure.

## II.    ANALYSIS

Despite its convoluted procedural history and the complicated relationship between the parties, the resolution of this litigation is relatively straightforward. The parties entered into a binding contract which contained an arbitration agreement. The matter underlying this dispute arose during the contract's term and is covered by the arbitration clause. Local 1982's grievance was not resolved at one stage of the grievance process, and so that process must continue as laid out in the contract. *See, e.g., Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 206 (1991) (holding parties to an expired contract are not released from "obligations already fixed under the contract but as yet unsatisfied"); *Local 1982 I*, 560 F. App'x at 538 ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the

3

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (quoting *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986))).

Midwest argues the arbitration award became final when neither party filed a notice of appeal within ten days of issuance of the award on April 16, 2012, and the clarification hearing was the only available option left in the grievance process. (Doc. No. 23 at 8). Therefore, Midwest claims, nothing else may be done in this case – "the Joint Grievance Committee was unable to clarify the [arbitration award]. Accordingly, the [arbitration award] remains ambiguous and, therefore, unenforceable." (Doc. No 23 at 10-11).

Midwest, however, fails to acknowledge the reason neither party filed a notice of appeal in 2012. As the history of this dispute makes clear, Midwest "simply chose not to participate" in the Joint Grievance Committee hearing. *Local 1982 I,* 560 F. App'x at 540. Local 1982 obtained what it thought to be an award granting it the relief it requested and so it filed suit to confirm that award as permitted by the CBA.

My earlier order returned the arbitration award to the contractual grievance process for clarification. The inability of the two Joint Grievance Committee members to agree on the proper meaning of the arbitration award cannot mean, as Midwest claims, that the process simply ends, and it is not required to do what the Sixth Circuit previously ordered it to do. *See, e.g., Indus. Mut. Ass'n, Inc. v. Amalgamated Workers, Local Union No. 383,* 725 F.2d 406, 412 n.3 (6th Cir. 1984) ("A remand is proper . . . to clarify an ambiguous award <u>or to require the arbitrator to address an issue submitted to him but not resolved by the award</u>." (emphasis added)). Like its prior arguments against remand, Midwest's interpretation of the award and the CBA itself "is no remedy at all" and does not fulfill "the CBA requirement for the creation of a trust fund." *Local 1982 II*, 694 F. App'x at 989.

Finally, as has been true throughout the parties' dispute, the CBA does not provide "a selection process" for the members of the Joint Grievance Committee, and Local 1982 fails to

4

establish it is entitled to relief based upon the identity of the individuals who made up that Committee. *Local 1982 I*, 560 F. App'x at 539 n.5.

### III. CONCLUSION

For the reasons stated above, I remand this matter and order that the parties proceed with the grievance and arbitration procedure set forth in Article 25 of the CBA.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge